LOY, etc., Appellants, v. McCLURE et al., Respondents.

St. Louis Court of Appeals, April 30, 1907.

AGENCY: Scope of Authority. Where one who had sold and in-
dorsed various notes, payable to himself, to a bank, had au-
thority from the bank to collect money in payment of such
notes, this did not show authority, real or apparent, to take back
a horse for which one note was given in settlement of that note.

Appeal from Lawrence Circuit Court.—*Hon. F. C. John-
ston,* Judge.

REVERSED AND REMANDED.

*H. H. Bloss* for appellant.

*McPherson & Hilpirt* for respondent.

GOODE, J.—This action was instituted before a
justice of the peace on two promissory notes, one for
$50, dated July 19, 1904, and one for $51.50, of the same
date, both payable to G. A. Paul, or order, executed by
defendant and drawing interest at the rate of eight per
cent per annum. The first note fell due six months after
date and the second one in ninety days. Both were in-
dorsed on the back by G. A. Paul, the payee, to D. B. Loy,
cashier, and protest, demand and notice of dishonor
waived. The cause went from the justice's court to the
circuit court where defendants offered to allow plain-
tiff to take judgment on the note for fifty dollars. Plain-
tiff had judgment on said note, but the verdict and judg-
ment were for defendants on the other one. The other
note was given to the payee in payment for a horse and
was secured by a mortgage on the animal. Subsequently
the horse was sold under the mortgage with plaintiff's
consent and forty dollars realized and credited on the
124 App.—44

note. There were no pleadings in the case, but the defense is that the horse was warranted by Paul and not proving to be as warranted, was, by an agreement between Paul and defendants, turned back to the former in payment of the note. At the time this arrangement was made the note was owned and held by plaintiff, to whom it had been assigned for value, and there is no contention to the contrary. Neither is it asserted that plaintiff was directly a party to the arrangement to satisfy the note by giving the horse back to Paul. What is contended is that the Miners and Merchants Bank, for which Loy, the cashier, held the note in trust, had conferred authority on Paul to collect the money on the note. The only evidence adduced to establish this defense was that at the trial of the cause in the justice's court, Ruppell, the assistant cashier of the bank, had been heard to say, in substance, that Paul, who had sold various notes to the bank, collected money on them from time to time and turned it over to the bank and was authorized to do so. It was not shown that the defendants relied on any such authority in dealing with Paul, or, indeed, knew of it until after they had been sued. Nevertheless if he had authority to act as the bank's agent, and his arrangement with defendants was within the scope of his authority, the bank is bound by it. In our opinion the testimony shows Paul never had been given any positive authority, but that now and then he made payments on the notes he had indorsed to the bank and the bank accepted such payment, which in some instances, had been collected by Paul from the makers of the notes; and perhaps the bank's officers knew he had, though they denied knowing it and denied, too, that he was the bank's agent for any purpose. Granting for the argument that the evidence tended to prove he was the authorized agent of the bank to collect the notes indorsed by him, including the one in suit, there is no evidence whatever to show his authority went further and embraced the right to

take back the horse he had sold in satisfaction of the note. There is no merit in the defense. Defendants relied on no authority, real or apparent, in Paul in making the arrangement with him, and certainly he had no real authority to make it. One of the defendants swore they gave back the horse because they believed Paul was honest and would procure the note and the other defendant swore Paul was to give the note back. It is plain defendants relied on no authority in Paul to represent the bank, but on his promise to procure the note. In truth it is doubtful if defendants knew the bank had the note when they settled with Paul. That they did not regard their arrangement with him as binding on the bank is shown by the fact that they cooperated with the latter in enforcing, by a sale of the horse, the mortgage they had given to secure the note; a circumstance which proves conclusively they had looked on the note, not as extinguished, but as an outstanding obligation. Therefore it is clear Paul had no authority from the bank to settle with defendants by taking back the horse and that defendants neither believed, nor had cause to believe, he was acting for the Bank.

The judgment is reversed and the cause remanded. All concur.